## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS CHRISTOPHER
SCHWEIZER,

|  |  |
|---|---|
| Petitioner, | Case Number: 19-13414 |
| | Honorable Victoria A. Roberts |
| v. | |
| CONNIE HORTON, | |
| Respondent. | |

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Thomas Christopher Schweizer filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree criminal

sexual conduct.  Petitioner raises four grounds for relief.  The Court finds that his claims

do not warrant relief and denies the petition.  The Court also denies a certificate of

appealability and grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.    Background

Petitioner's conviction arises from the sexual assault of his step-daughter.  The

Michigan Court of Appeals outlined the circumstances leading to Petitioner's conviction

as follows:

> Defendant began sexually assaulting the victim in 2009 when the family
> lived in Florida.  At the time, the victim was approximately eight years old.
> The family moved back to Michigan in 2010, and the assaults briefly
> stopped during a time when defendant was rarely able to be alone with the

child.  However, when the victim's mother began working late afternoons and nights in late 2010 or early 2011, the assaults resumed.

*People v. Schweizer*, No. 340511, 2018 WL 6578952, at *1 (Mich. Ct. App. Dec. 13, 2018)

Petitioner was charged with two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct.  A jury in Oscoda County Circuit Court acquitted him of both first-degree criminal sexual conduct counts and was unable to reach a unanimous verdict on the second-degree criminal sexual conduct charge.  *Id.* at *1, n.1.  Petitioner's second jury trial resulted in his conviction for second-degree criminal sexual conduct – the conviction that is the subject of this petition.  *Id.*  On September 12, 2017, he was sentenced as a third habitual offender to 12-1/2 to 30 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising five claims.  The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded to the trial court to articulate a factual basis for imposed court costs.  *Id.* at *7.

Petitioner sought and was denied leave to appeal in the Michigan Supreme court. *People v. Schweizer*, 504 Mich. 957 (Mich. Sept. 10, 2019).

Petitioner then filed the pending petition for the writ of habeas corpus. He raises these claims:

"I.  The trial court's changing the included conduct that the jury could consider in deciding guilt on criminal sexual conduct 2nd degree in the second trial from what it was in the first trial without any request or stipulation to do so violated the defendant's right to due process and fair notice under the 5th and 14th amendments and making it impossible to

2

determine whether or not the defendant received a unanimous verdict on any particular factual scenario for second degree CSC.

II. The defendant was unfairly prejudiced with the evidence admitted under M.C.L.A. 768.27(A) of a 1994 CSC 4th degree conviction because this conviction flunks the balancing test particularly when the prosecutor established that it was the result of a plea reduction from 2nd degree criminal sexual conduct which in fact was not included in the trial courts' order permitting the evidence.

III. Rampant prosecutorial misconduct throughout the trial which included, among other things, shifting the burden of proof, stating facts not of record and repeatedly vouching for her witnesses, in the aggregate, unfairly violated the defendant's right to a fair trial.

IV. The defendant was denied his Fifth Amendment right to testify which along with not objecting to highly prejudicial testimony about assault on the child's mother constituted an objectively unreasonable trial strategy denying defendant a fair trial."

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes

the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

4

III.    **Discussion**

   **A.  Jury Instructions**

Petitioner's first claim alleges deficiencies in the jury instructions.  Petitioner

argues that the jury instructions violated his Fifth Amendment right to advance notice of

the charges against him because the instructions given in the second trial differed from

those in the first trial.  He also argues the instructions violated his right to a unanimous

verdict.  Respondent argues that this claim is waived.  The Court holds the claim is

waived and, alternatively, meritless.

The Michigan Court of Appeals held that Petitioner waived review of his

instructional error claim because defense counsel affirmatively approved of the trial

court's instructions.  *Schweizer*, 2018 WL 6578952, at *1.  The Court of Appeals also

determined that Petitioner's claim was meritless and that Petitioner abandoned any claim

that defense counsel was ineffective for approving the instructions because Petitioner

failed to raise the claim in accordance with state court requirements.  *Id.*

A waiver ordinarily is "an intentional relinquishment or abandonment of a known

right or privilege," and a determination of whether there has been an intelligent waiver

"must depend, in each case, upon the particular facts and circumstances surrounding that

case, including the background, experience, and conduct of the accused."  *Johnson v.

Zerbst*, 304 U.S. 458, 464 (1938).  When a defendant intentionally relinquishes and

affirmatively waives a right, a claim based on that right is waived and the Court need not

review it.  *See United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021); see also

*Tackett v. Trierweiler*, 956 F.3d 358, 371 (6th Cir. 2020) (concluding that, because the

Case 2:19-cv-13414-VAR-EAS   ECF No. 7, PageID.829   Filed 03/20/23   Page 6 of 20

habeas petitioner affirmatively approved the jury instructions at trial, he waived habeas review of his claim about the instructions).

Defense counsel expressly approved the jury instructions, waiving his right to appellate review of the instructions.  (ECF No. 5-7, PageID.497).  The Michigan Court of Appeals reasonably rejected Petitioner's claim as waived so the Court need not address the claim on the merits. *Montgomery*, 998 F.3d at 697-98.

Even if the claim was not waived, habeas relief would not be warranted.  First, to the extent that Petitioner argues that the instructions violated state law, he fails to state a cognizable claim.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Second, Petitioner received fair notice of the charges against him.  The Sixth Amendment guarantees a criminal defendant a right to be clearly informed of the nature and cause of the charges against him so the defendant can prepare a defense.  *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  A complaint or indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986).

Petitioner argues that he was denied fair notice of the charges because the instructions in his second trial differed from the instructions in the first trial (which resulted in a hung jury).  Prior to the second trial, the prosecution filed an amended information charging Petitioner with second-degree criminal sexual conduct under Mich. Comp. Laws § 750.520c.  On appeal, the Michigan Court of Appeals held that the jury

6

instruction given was consistent with and accurately reflected the law.  The state court

concluded "that defendant had plenty of advance notice of the charges."  *Schweizer*, 2018

WL 6578952, at *2.  Petitioner does not establish that the court of appeals' resolution of

this issue is contrary to or inconsistent with clearly established federal law.  He offers no

support for his assertion that the jury instructions in his second trial should have been the

same as those in the first trial.

  The amended information accurately stated the charge Petitioner faced and the

instructions correctly stated the elements of the crime.  Petitioner falls far short of

showing that the state court's decision "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  *Harrington,*  562 U.S. at 102-03 (internal quotation omitted).

  Petitioner also claims that the instructions violated his right to a unanimous verdict

because he was charged with one count of second-degree criminal sexual conduct, but the

victim testified about more than one incident when Petitioner initiated sexual conduct.

Petitioner argues "there is no way to know not only which act was proven beyond a

reasonable doubt but whether the jury agreed on any one act at all."  (ECF No. 1-1,

PageID.14.)  The Michigan Court of Appeals held that jurors are not required to agree

about which specific acts occurred where, as in this case, "materially identical evidence is

presented with respect to each act."  *Schweizer*, 2018 WL 6578952, at *2.

  Petitioner has not shown that the state court's decision was contrary to, or an

unreasonable application of, clearly established federal law.  For a conviction to be valid,

the Constitution requires that all twelve jurors find that the Government proved each

element of the offense beyond a reasonable doubt. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). But there is no federal constitutional requirement that a jury decide "unanimously which of several possible sets of underlying ... facts make up a particular element" or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999). The Supreme Court distinguished between unanimity that the defendant committed the crime of conviction – which is required -- and unanimity as to how the defendant committed the crime – not required. *Id. See also, Schad v. Arizona*, 501 U.S. 624, 632 (1991) (holding there is "no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."). *Schad v. Arizona*, 501 U.S. 624, 632 (1991).

The Michigan Court of Appeals reasonably concluded that the jury unanimously decided that Petitioner committed second-degree criminal conduct, and that even if the jury did not unanimously agree on the means by which he did so, no constitutional violation occurred.

The Court denies relief on this claim.

**B. Admission of Other Act Evidence**

In his second claim, Petitioner argues that the trial court erred in admitting evidence that he had previously been convicted of fourth-degree criminal sexual conduct. The earlier conviction involved Petitioner's 14-year-old sister-in-law.

The Michigan Court of Appeals held that the evidence was properly admitted under Mich. Comp. Laws § 768.27a, which allows that in certain criminal sexual cases involving a minor, evidence that the defendant committed another listed offense against a

8

minor on a separate occasion may be admitted "for its bearing on any matter to which it is relevant."  Mich. Comp. Laws § 768.27a.

The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).  An inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  Petitioner's claim that state law required exclusion of this evidence is not cognizable on habeas review.

Even if Petitioner's argument is construed as raising a due process claim, habeas relief is not warranted.  An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'"  *Dowling v. United States,* 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).  The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly."  *Estelle*, 502 U.S. at 73 (1991).  To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

"There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The Supreme Court has

not addressed the issue of propensity evidence in constitutional terms, finding admission of such testimony more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Indeed, "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012)  Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1).  *Bugh*, 329 F.3d at 513.

Petitioner is not entitled to relief on this claim.

## C. Prosecutorial Misconduct

Petitioner asserts that he was denied his right to a fair trial by the prosecutor's misconduct.  Specifically, Petitioner claims that the prosecutor (1) diminished the burden of proof, (2) used Petitioner's silence against him, (3) urged jurors not to read certain parts of the jury instructions, (4) stated facts not of record, (5) vouched for the prosecution witnesses, (6) argued that Petitioner fit the profile of a sex offender, (7) denigrated defense counsel, (8) deliberately introduced inadmissible inflammatory evidence, and (9) attempted to secure a conviction based on Petitioner's bad character.[1]

---

[1] **Error! Main Document Only.**Respondent argues that Petitioner's prosecutorial misconduct claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas

Under *Darden v. Wainwright,* 477 U.S. 168 (1986), a prosecutor's improper comments violate a defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct is much more than conduct that is "undesirable or even universally condemned."  *Id.* (internal quotation omitted).  To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair.  *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted).  "That leeway increases in assessing a state court's ruling under AEDPA," as this court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

### 1.

First, Petitioner argues that the prosecutor diminished the prosecution's burden of proof.  Petitioner points to the prosecutor's statements during *voir dire* that the "level that

---

the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

[the prosecutor] needs to prove this case is not 100 percent" and that a juror could have "some doubt" and still find Petitioner guilty.  (ECF No. 5-4, PageID.266, 270.)  The Michigan Court of Appeals held that the prosecutor made an accurate statement of the law when she said she did not have to prove the case "100 percent" and that she reiterated the prosecution's burden to prove the case beyond a reasonable doubt.  *Schweizer*, 2018 WL 6578952, at *4.  The state court's decision is amply supported in the record.  In addition, the trial court explained during initial jury instructions and final instructions that the prosecutor had to prove Petitioner's guilt beyond a reasonable doubt.  The state court's decision was not contrary to, or an unreasonable application of, *Darden*.

## 2.

Second, Petitioner alleges the prosecutor improperly suggested during opening statement that Petitioner's silence could be used against him.  Indeed, the prosecutor stated that, after the arresting officer told Petitioner he was being arrested for charges of criminal sexual conduct, Petitioner "didn't even ask why, or who. Nothing."  (ECF No. 5-4, PageID.304.)  Moments later, the prosecutor also noted that the day he arrived at the county jail Petitioner attempted suicide "after not even asking why or who were making the allegations, … you can consider that in determining whether that shows consciousness of guilt."  *Id.*

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  *Griffin v. California*, 380 U.S. 609, 615 (1965).  A defendant's decision to remain silent cannot be used as substantive evidence

12

of guilt.  *Id.*   The prosecutor's remarks in her opening statement clearly violated this guarantee.

Even though improper remarks about a defendant's right to remain silent do not constitute a structural error requiring automatic reversal.  *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993).  Habeas relief may not be granted "based on trial error unless [a petitioner] can establish that it resulted in 'actual prejudice.'"  *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  "There must be more than a 'reasonable probability' that the error was harmful."  *Id*. (quoting *Brecht*, 507 U.S. at 637).

The prosecutor's comments about Petitioner's post-arrest silence were improper, but they amounted to harmless error.  The Supreme Court held that comments about a defendant's Fifth Amendment invocation "cannot be labeled harmless" where "such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal."  Anderson v. Nelson, 390 U.S. 523, 523-24 (1968).  Here, the prosecutor's comment was not extensive and was limited to her opening statement. It did not render the trial fundamentally unfair and it did not infect the trial with such unfairness that the resulting convictions amount to a denial of due process.

**3.**

13

Next, Petitioner argues that the prosecutor twice during her closing argument urged jurors not to read certain parts of the jury instructions.  The Michigan Court of Appeals held that Petitioner mischaracterized the prosecutor's statements:

> In context, it is clear that the prosecutor was instructing the jury not to read along with her while she was explaining the instructions to them. Rather, the jury should listen to her argument now, as they would have an opportunity during deliberations to review the instructions again.  The prosecutor also told the jury, "[O]nce you get in there, break it down sentence for sentence."  Accordingly, these statements do not provide a basis for reversal.

*Schweizer*, 2018 WL 6578952, at *4.

The Michigan Court of Appeals' decision is supported in the record.  The prosecutor's argument clearly invited the jurors to listen to her argument and then to carefully review the jury instructions once they began deliberations.  The Court finds no misconduct in the prosecutor's argument.

**4.**

Next Petitioner contends that the prosecutor argued facts not in evidence during her closing argument.  He cites fifteen pages of the prosecutor's argument during which defense counsel twice objected to the prosecutor's argument.  In both instances, the objected-to argument was brief, isolated, and the prosecutor quickly moved on from the challenged argument.  Petitioner fails to show that the prosecutor's misstatements deprived him of a fundamentally fair trial.

Petitioner's objection to the prosecutor's use of the label "pedophile" also does not entitle him to relief.  Petitioner states that a pedophile is defined as one who is attracted to preteens, whereas he was charged with committing a sexual act with an adolescent girl.

14

(ECF No. 1-1, PageID. 20, n.2.)  The Michigan Court of Appeals denied this claim because there was ample testimony that Petitioner assaulted the victim when she was a preteen in Florida and Petitioner was not deprived of a fair and impartial trial by the reference.  *Schweizer*, 2018 WL 6578952, at *4.  Petitioner fails to show that the state court's ruling is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  *See Kaeding v. Warden, Lebanon Correctional Institution*, No. 16-4104, 2017 WL 4404598, at *4 (6th Cir. Apr. 26, 2017) (prosecutor's reference to defendant as a pedophile during closing argument did not rise to the level of prosecutorial misconduct).

**5.**

Next, Petitioner claims that the prosecutor engaged in misconduct by allowing the victim's doctor and school counselor to vouch for the victim's credibility and, in closing argument, by arguing that the victim's doctor and counselor vouched for the victim's credibility.

Prosecutors may not vouch for a witness's credibility.  Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Michigan Court of Appeals held that the prosecutor properly argued that,
based on the evidence presented, the witnesses' testimony was consistent with what the
victim reported. *Schweizer*, 2018 WL 6578952, at *5. This decision is a reasonable
application of the *Darden* standard. The prosecutor did not argue that she possessed any
special knowledge about the truth of the prosecution witnesses' testimony. Her argument
that testimony from the victim's doctor and counselor was consistent with the victim's
was a proper argument based on the evidence presented.

**6.**

Petitioner maintains the that the prosecutor argued improper profile evidence. The
Michigan Court of Appeals' held that the portions of the record cited by Petitioner
contained no criminal profiling. *Schweizer*, 2018 WL 6578952, at *4. This Court also
finds no evidence of criminal profiling in Petitioner's record citations.

**7.**

Next, Petitioner argues that the prosecutor improperly denigrated defense counsel
multiple times throughout the trial and disparaged the role of defense lawyers generally.
He maintains that the prosecutor improperly accused defense counsel of misleading the
jury, spinning the evidence, making up facts, and trying to prove his client's innocence.
The Michigan Court of Appeals held that while the prosecutor's arguments exceeded the
bounds of proper argument they did not deprive Petitioner of a fair trial. The court
reasoned that the trial court instructed the jury that the attorneys' arguments were not
evidence and jurors are presumed to follow their instructions. *Schweizer*, 2018 WL
6578952, at *5.

16

The state court's denial of this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.  In *Darden*, the Supreme Court considered multiple startling comments by the prosecutor including, among other comments, the prosecutor's characterization of defendant as an "animal" who

> Shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash.... I wish [the victim] had had a shotgun in his hand when he walked in the back door and blown [the defendant's] face off. I wish I could see him sitting here with no face, blown away by a shotgun.... I wish someone had walked in the back door and blown his head off at that point.

*Darden*, 477 U.S. at 180-181, nn. 11, 12.

The Supreme Court held that these comments did not violate the defendant's right to a fair trial.  *Id.*  The prosecutor's arguments here, much milder in comparison, do not amount to a violation of Petitioner's due process rights and the court of appeals' decision was not an unreasonable application of federal law.

**8.**

Petitioner maintains that the prosecutor deliberately introduced inadmissible inflammatory evidence and attempted to convict Petitioner based on his bad character. The prosecutor elicited testimony from the victim that Petitioner often beat her with a belt and that she also had seen Petitioner beating her mother.  The Michigan Court of Appeals denied this claim because Petitioner failed to explain how admission of this testimony constituted prosecutorial misconduct.  *Schweizer*, 2018 WL 6578952, at *6.  Petitioner similarly fails to make such a showing in his habeas petition.  He has not shown that the

evidence was inadmissible.  The prosecutor did not ask the jury to convict Petitioner of sexual assault based upon these other assaults and the evidence was relevant to explain the victim's delayed reporting.  Habeas relief is denied on this claim.

**9.**

Finally, Petitioner claims that the cumulative effect of the prosecutor's errors denied him his right to a fair trial.  The proven errors are the prosecutor's comments about Petitioner's silence and the prosecutor's improper comments about defense counsel.  As discussed, the comments, while improper, did not infect the trial with unfairness.  The remaining meritless individual claims of error cannot by accumulation create a constitutional infirmity.  *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) ("[T]he accumulation of non-error cannot collectively amount to a violation of due process.").

**D.  Right to Testify in His Own Defense**

In his fourth claim, Petitioner maintains that he was denied the right to testify in his own defense in violation of the Fifth Amendment.[2]

A criminal defendant has a constitutional right to testify in his own behalf.  *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify.  *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000). In addition, a state trial

---

[2] **Error! Main Document Only.**The Court finds the interests of judicial economy are best served by bypassing Respondent's procedural default argument and addressing the merits of this claim.  *Lambrix*, 520 U.S. at 525.

judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987). Waiver of the right to testify may be inferred from a defendant's conduct. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir.2000).

Petitioner did not alert the trial court at any time that he wanted to testify. Petitioner has not overcome the presumption that he willingly agreed not to testify. *Gonzales*, 233 F.3d at 357.

Petitioner also fails to show that counsel was ineffective for not presenting Petitioner as a witness. To establish ineffective assistance of counsel, a Petitioner must show that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner does not present any evidence, other than his own assertions, to show that he was misled or believed he was not allowed to testify. Moreover, Petitioner does not offer any evidence to suggest how his case was prejudiced by his failure to testify. There was ample evidence to convict Petitioner and Petitioner does not suggest how his failing to testify might have altered the outcome of the trial. Petitioner is not entitled to relief on this claim.

## IV.     Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could not debate the conclusion that Petitioner has failed to demonstrate an entitlement to habeas relief.  A certificate of appealability is denied.

The Court grants Petitioner leave to appeal in forma pauperis because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.  Conclusion

The Court DENIES the petition for writ of habeas corpus and DENIES a certificate of appealability.

If he chooses to appeal this decision, Petitioner may proceed *in forma pauperis*. 28 U.S.C. § 1915(a)(3).

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated: 3/20/2023